Good morning, your honors, and may it please the court. My name is Kathleen Sullivan, and I represent appellant Leonard Bosack and the Bosack appellants in this matter. I'll speak first, and then Mr. Smith will speak on behalf of Ms. Lerner, the other appellant in this matter. And I'd like to reserve three minutes for rebuttal. Is that three for you and three for Smith, or just three for you? Three for me. Okay. We'll listen to see how much he wants. Thank you, your honors. This is the rare case in which an arbitration went so far off the rails and involved arbitrators so greatly exceeding their powers that it requires this court's reversal under Federal Arbitration Act 9 U.S.C. 10A4. I'd like to begin with the functus officio, or better put, I think, AAA Rule 46 reasons for reversal. And that goes to the point that here the arbitration panel changed its mind about key facts between Arbitration Award No. 3 and Arbitration No. 4. Now AAA Rule 46, reflecting the old common law doctrine of functus officio, which says arbitrators can't go back once they've exhausted their authority on a task performed and change their minds, Rule 46 states that an arbitrator is not empowered to redetermine the merits of any claim already decided, is not empowered to redetermine the merits of any claim already decided. Now here the arbitrators did just that, and I'd like to focus your honors' attention on the difference between Final Interim Award No. 3, the accounting award, and Award No. 4. Now there are a lot of facts in this case, but we really just have to boil them down to a dispute over whether Mr. Sourd was owed a partnership interest in the Cartesian partnership. In the accounting award No. 3 — Let me ask you a question. I don't mean to really interrupt, but I am interrupting, and I know. The Ninth Circuit has never ruled about this, have we? Your Honor, about functus officio? Yes. That's not quite right, Your Honor. In the McClatchy case in 1982, an appellant — You think that directly addresses this particular issue? Well, it's clear, Your Honor, it's a panel on which Judge Kennedy sat, with Judge Kennedy. McClatchy clearly says that functus officio applies in the Ninth Circuit as an aspect of manifest — sorry, as a matter of exceeding the powers of the arbitrators. Functus officio binds the arbitrators to prior rulings, and it's very clear that McClatchy for this circuit was incorporating the old common law of functus officio, and it's clear as day that the old common law doctrine of functus officio applies to all awards that are final, even if they are interim or partial final awards. It's just like a Rule 54B ruling under the Federal Rules of Civil Procedure. An award can be final, even if it's a partial or interim award. And the award here, there really can't be any dispute that the award here in Award No. 3 — remember, Award No. 3 gives Mr. Sourd $1 million for his partnership interest, plus $500,000 for the increase in his partnership interest over the period of the arbitration. And there's no — That was the award that came after the accounting and treated him as if he were a limited partner to the date that the balance was struck, I guess. That's exactly right, Judge Thompson. And on page 285 of the Excerpts of Record, and on page 309 of the Excerpts of Record, Award No. 1, which is then incorporated in Award No. 3, says, Sourd is and continues to be a partner in Cartesian Trust. Cartesian Trust continues to exist, and we're going to give him an appreciation in his interest from 2003 to 2006 because the trust still — sorry, because the partnership still exists. Then, Judge Thompson, in Award No. 4, if you then turn to Excerpts of Record 391, you see that the panel does a complete about-face. Now we're in the tort award for the claims for conversion and breach of fiduciary duty. Now the panel, completely contrary to its earlier ruling, says, we rule that Mr. Bosak affected a nonjudicial dissolution of the partnership and affected a nonjudicial termination of Mr. Sourd's partnership in Cartesian. So now the panel says — Does that really change Award No. 3? I mean, in Award No. 3, they gave a million and a half, and that stayed put. Well, Your Honor, that's correct. And then in Award No. 4, of course, once the panel says, oh, well, there's a million dollars in tort actual damages, the panel says, well, we can't pay that to him again. It would be duplicative of the award for the accounting. But Judge Canby, the key point about Rule 46 is it doesn't just pertain to redetermining a claim, it pertains to redetermining the merits of a claim. And it's very clear that just as would be the case for collateral estoppel in the litigation context, you can't redetermine a fundamental or essential element of a prior claim, even if you're in a new claim. I'd refer you — Or does Award No. 3 explicitly adopt the language from Award No. 1 that you referred to? It does so, Your Honor, on excerpts of Record 309. 309 refers back to excerpts of Record 285, and excerpts of Record 309 is where the court — sorry, where the panel says there's still a partnership, and he's still a partner in it. And, in fact, remember that the panel has already said he's a special limited partner. So it's crucial to Award No. 3 that the partnership exists and that Mr. Sourd is still a partner in it. Otherwise, there would be no basis in Award No. 3 to have given Mr. Sourd the appreciation in his interest from 2003 to 2006. So, Judge Canby, what changes in Award No. 4 is the panel now says, aha, we have a conversion and a breach. That's because Sourd was effectively kicked out in 2003. He was not a partner, and he was — and the partnership was effectively dissolved. It was affected with a nonjudicial dissolution. That's crucial to the conversion and breach of fiduciary duty findings in Award No. 4, and the punchline to this is we've got $20 million of punitive damages imposed for $1 million of failure to pay a partnership interest, a grossly excessive damages award, and it all turns on the ability to find a tort in Award No. 4. But to find an award in Tort No. 4, the panel has to say, pay no attention to what we said in Award No. 3, where he was and continued to be a partner, and the partnership did and continued to — does exist and continued to exist. Now we'll say it was dissolved in 2003, and that means that Bosak and Lerner stole his money. How did they steal it? For Award No. 4, you have to find that the partnership was dissolved. That's the only way you can find conversion and breach for failing to pay the interest in a prompt manner. The theory of Award No. 4 is they didn't pay his interest in a prompt manner after the partnership was dissolved. That's contrary to the key finding in Award No. 3. And just to go back to your honors question, Judge Smith, the common law doctrine of functus in this circuit does say that even if there's an interim final award, and even if it goes to a fact essential to the claim, a fact essential to the claim, even on a new claim, the arbitrators cannot change their minds. And there's good reason for this. You don't want arbitrators to change their mind midstream on a crucial fact in a series of partial awards, because arbitration, unlike, your honors, sitting in judgment on the district courts, is a situation where the arbitrators come into a situation on a case-by-case basis. You want to make sure that since they're not subject to the institutional restraints of the district court who have to obey precedent, since they're not subject to full error review by the appellate courts, you want to make sure that the parties can rely on the consistency of prior rulings with later rulings. And as the law lord said in the case of Fidelitas, the great English shipping case on which many of these functus officio cases rely, you want judgment to be binding between an arbitration award and a subsequent award. But a fortiori, you want interim awards within an arbitration to be binding successively. The panel couldn't change its mind. As to finality, what are the standard for finality in your mind? I mean, where do we find, it seems to me, the standard of finality is quite important, because even if we have suggested that functus officio is indeed our circuit's rule, and then we have to determine if something is final, what are the standards for determining that finality? I know you've talked generally, but if I'm to apply a standard to review. The key standard, Your Honor, and we'd refer, Your Honor, to the sister circuit cases of trade and transport in the Second Circuit and Lindland in the Seventh Circuit, as well as McClatchy, as well as Mellon and Playstar in the Southern District, all cited in our briefs. In all of these cases, we can regard an interim award as final if the parties treated it as final, and if the panel intended it to be immediately confirmable. And I wouldn't... But aren't we really talking about whether the award states it's final, whether the award finally and definitely disposes of the separate independent claim, and then whether the arbitrator intended the award to be final? Isn't that what we're really talking about? Yes, Your Honor, exactly so. And if, in fact, we're really talking about that, then we have to determine if we're really going where you want to go, that the award in 3, which you suggest depends on 1, but the award in 3 is truly separate and independent from the breach of fiduciary responsibility, isn't it? Yes, Your Honor, but I can prove that to you. If you would turn to Excerpts of Record 316, you'll see that all three of your criteria are met here. On Excerpts of Record 316, the panel states in no uncertain terms that Award No. 3, unlike Awards No. 1 and 2, is intended to be immediately confirmable upon entry, immediately confirmable upon entry. And it says we see no reason why Mr. Sauer should have to wait any longer for its money. So the panel itself states a clear intent in certain terms on ER 316 to make Award No. 3 final as to the discrete issue of the accounting. Now, Judge Canby, we submit that you can't determine the accounting on the theory that the Cartesian partnership is an extant partnership, and Mr. Sauer is and continues to be a partner in it in Award No. 3, and then go to Award No. 4 after Award No. 3 is final and flip your theory and say, oh, no, no, the partnership was dissolved in 2003. Your Honors, I would just like to speak briefly to the punitive damages theory, which is a different theory for why you should vacate, order the award vacated. There are two aspects to the punitive damages theory. Both of them depend on manifest disregard. And Judge Smith, it's very clear that manifest disregard is the law of this circuit. Yes, it is. Because just recently, Judge Gould, writing for the court in the Comedy Club case, which we submitted to Your Honors in a 28-J letter, stated in no uncertain terms that as the court stated on Bank and Chiesera, and as it reiterated in Comedy Club, after Hall Street versus Mattel, manifest disregard is a statutory ground under FAA 10-A-4 for throwing out an arbitration award. Your Honors, there's two keys to the punitive damages argument. The first is it's undisputed controlling law in California, which the panel said governed, that punitive damages may not rest upon litigation conduct, or in this case, arbitration conduct. We refer you to the Danza-Santa Cruz case cited in our briefs. And there's no question you can't rest the punitives on finding supposed malice, trickery, or deceit in the course of the litigation. And yet, that's exactly what Mr. Sourd asked the panel to do, and that's what the panel did do in Award No. 5. I'd refer Your Honors to just look at Mr. Sourd's brief at page 823 of the excerpts. At page 823, Mr. Sourd says, here's why we think the conduct is reprehensible. It's because Mr. Bosak and Ms. Lerner forced Sourd to defend against claims of misconduct. They made public filings in federal district court in Seattle. They engaged in a campaign to harm Sourd's reputation, supported by experts, accountants, lawyers, and witnesses in the arbitration and the associated district court proceedings. They made allegations of looting. Terms like defend, filing, witnesses, allegations, all refer to litigation conduct. And the panel never said that it was basing its malice findings, as to Mr. Bosak or Ms. Lerner, on anything other than litigation conduct. If you look to Award No. 5, excerpts of Record 952, they say we find malice here because of the overarching conduct of Lerner and Bosak throughout the period, commencing with the firing of Sourd in 2003 through the end of testimonial hearings in this matter. If there was ever a case in which punitives were improperly rested on litigation conduct, this is it. I'd like to sit down and let my colleague speak. Let your colleague. He's already mad that you took three minutes of his time. Thank you, Your Honor. Thank you, Your Honor. Steve Smith for Petitioner Appellants, Sandy Lerner and the Sandy Lerner Trust. I join in Ms. Sullivan's arguments, but would like to focus on a few issues that highlight Sandy Lerner's remoteness from the actions that gave rise to tort liability here. And it's important to point out that she was only found liable for conversion, not breach of fiduciary duty. There was no claim of breach of fiduciary duty against her, probably because she was not a partner in Cartesian. In Award 4, the panel found that Sandy Lerner was individually responsible for the actions of SLLB, the company that became the general partner of Cartesian after Mr. Sourd was removed, and that her failure through SLLB in turning over to Sourd his interest in the assets of Cartesian within a reasonable time was willful conversion. And the panel found that Sourd's interest in Cartesian was $1,001,101 as of September 29, 2004. So the tort of conversion against her was her failure through SLLB to pay him that amount by that date, and that was it. Now, critically, he never demanded $1,001,101 and never contended that that was his interest in Cartesian. Instead, in Claim 6, in the arbitration, he requested the dissolution of Cartesian and an accounting and distribution of his interest in the partnership. And in connection with that claim, he made every effort to try and establish a very, very high value for his partnership interest. And Bozak and Cartesian... But you're really not arguing that the argument that Lerner converted Sourd's interest was not before the panel, are you? No. The conversion claim was before the panel. Okay. But he never made a demand for that amount, and that was a required element. If the conversion issue was in front of the panel, again, what is my standard review as to this panel, and how do I get to your issue? Well... I'm asking you the broad question because it seems to me that if the argument that Lerner converted Sourd's interest was before the panel, which I found at ER 380, if that were before the panel, then it seems to me that the argument now is, what can I do with what the arbitrators have done with that particular issue? And I have quite a standard review as to that. And so then how do I get to your issue, given the standard review that I have for overturning arbitrators at all? Right. Well, on the conversion claim, Your Honor, the panel's award was in manifest disregard of the law of conversion. Okay. So you're going to go with manifest. And it was completely irrational under Comedy Club because it did not draw its essence from the governing Wood Agreement. And the Wood Agreement very explicitly provided that Sourd was not entitled to a distribution of his interest in the partnership. That's Section 2.3 of the Wood Agreement, which the panel found in Award No. 1 was the governing agreement that controlled his rights with respect to Cartesian. And so the panel's award was in defiance of the terms of the agreement that they themselves found was applicable to the Cartesian partnership. So it is completely irrational in that respect. And that's an argument that goes both for Sandy Lerner and for Len Bozak. But it's also in manifest disregard of the law of conversion on every, almost every element of the claim. And going back to my point, what Sourd asked for was an accounting. And that's what he got in the arbitration. There were a number of legal issues that had to be determined before an accounting could be had. The parties didn't know what partnership agreement governed the partnership. It was an oral agreement. There was no signed written agreement. There was a conflict on that issue and the panel had to decide that issue before it could give an accounting. And the accounting claim, the resolution of all of these legal issues prior to the accounting claim proceeded in accordance with a schedule and a process established by the tribunal. I better reserve some time for rebuttal. Thank you. Good morning, Your Honors. I'm Dan Sharp for Arbitration Claimant and Appellee David Sourd. The court's task on this case is not one of appellate review of findings of fact and conclusions of law by a lower tribunal. It is under the Federal Arbitration Act, the FAA, to ensure that there was the full and fair performance of an agreement to arbitrate. The FAA was enacted in 1925 to overcome what was then longstanding judicial hostility to arbitration and to ensure that arbitration agreements were enforced according to their terms as other contracts. There are two stages at which courts examine the enforcement of agreements to arbitrate at the front end and compelling arbitration and on the back end after an award has been issued. We are on the back end, and the statute, 9 U.S.C. Section 10, lists four things that a court can find to overturn an arbitration award, and in terms, Judge Smith, of the standard of review, you're not, again, conducting appellate review of the award. You're seeing if there is facts in the record from which you can find corruption, fraud, or undue means by the arbitrator partiality, refusal to hear evidence, or the one that's relied on here is that the arbitrators exceeded their powers. And that has a very well-defined meaning in FAA jurisprudence. The powers of the arbitrators are defined by the agreement to arbitrate and the submission of the parties. The parties confer the power on the arbitrator that they exercise to adjudicate the dispute. These parties here conferred on these arbitrators plenary power to adjudicate the entire controversy between them, including punitive damages, which they sought from my client. They conferred plenary power on this arbitration panel to decide the dispute, and they had a full and fair hearing over 60 days of arbitration hearing over two years, 30 witnesses, over 500 exhibits, and they lost for good reason. Let me turn now to the argument of functus officio, that the arbitrators exceeded their power in making these interim awards with respect to Cartesian Partners. Cartesian Partners was a partnership that was formed in 1998 between Leonard Bozak and David Sourd. Mr. Bozak put in 95 percent of the capital, about $9.5 million, and David Sourd, my client, put in $1.5 million. $525,000 of his own money to create a partnership. And this, imagine this piece of paper is the partnership, Mr. Sourd's a partner, he's a general partner with a right to control the investments, full rights of a general partner, Mr. Bozak is the limited partner. In 2003, when Mr. Bozak and Ms. Lerner turned on Mr. Sourd and fired him from all his employments, from all his interests that he'd had for the past 11 years, they threw him out of Cartesian Partners. They said, you are not a partner. You have no lawful interest in this entity. And what they did with his partnership interest was they formed a new entity called SLLB, Sandy Lerner, Len Bozak, and they installed SLLB as the general partner. And going forward from 2003, they treated the partnership as their own and claimed that Mr. Sourd had no interest in it. In the arbitration, we brought three claims with respect to Cartesian Partners. One, a claim for dissolution and accounting of the partnership to get an equitable accounting of the fair value of Mr. Sourd's partnership interest. And a claim for conversion against both of them for taking his interest and treating it as their own. Three alternative claims. And in the arbitration, for reasons of scheduling and convenience, the arbitrators bifurcated the trial of those claims. The claim for the accounting was tried in the first phase of the trial, and it was decided in interim award number one. And the arbitrators there determined that indeed Mr. Sourd is entitled to an accounting of the value of his interest as of September 2006, and that's what they ordered to occur in interim award number one. And interim award number three was simply the valuation of that interest based on additional evidence of what the value was as of the date of September 2006. So they awarded an equitable accounting. And they do it on a necessary finding that he remained a partner until that date in September 2006. Whether it was necessary or not, what they determined was that he was, excuse me, he was equitably entitled to an accounting because he was wrongfully ousted from the partnership. If he should not have been ousted, this interest should have been his, and he should be entitled to the value of it as of the current date. I mean, so much of your opponent's argument says, well, they're just two inconsistent findings here. One was that he remained a partner until, you know, one period, and the other is that he ceased to be a partner and his partnership was converted earlier. They're not inconsistent at all, Your Honor. When someone's thrown out of a partnership wrongfully, that doesn't mean that the partnership interest becomes the rightful property of the tortfeasor, of the person who threw him out in violation of their rights and fiduciary duties. And the case I would cite to you for that proposition is Gurman v. Colburn, cited in a brief, 72 Cal F. 3rd, 544. And what it says is quite apt. Where a partner, and I'm reading from 72 Cal F. 3rd, page 564 to 565, where a partner or joint venture wrongfully repudiates the partnership or joint venture and converts the assets of the partnership or joint venture to his own use and benefit, the victim has at least alternative remedies. The alternative remedies, he can sue for the accounting or he can sue for the tort of conversion, which is what the plaintiff and Gurman did. And it's not, does not lie in the mouth of the wrongdoer to insist that the plaintiff choose one remedy over the other. You can plead cumulative or alternative relief, which is exactly what we did here. We got an accounting award, we got a tort award, and they're completely consistent. They both are based on the same factual finding, he was wrongfully ousted from the partnership. That entitles him to accounting and entitles him to a tort award. Mr. Sharpe, if you kind of look at this, that Mr. Soward was wrongfully excluded from the partnership. Or that his partnership interest was taken over by Bosak and Lerner. If you say that happened, then I guess you would say they shouldn't have ousted him that way. And as a result, if that were a wrongful ouster, he should be entitled to an accounting down to the date of something to determine what he would have received as a partner through that period of time. And they determined that was going to be $1.1 million, I think, or $1,001,000. Is that right? Well, it's 1.4. The date they fixed was September 2006, which was the current date in the arbitration. Now, that's the point I was getting at. Why did they pick that September 06 date? That was the date that was presented in arbitration, you say? Well, it was a substitute for the current date. They wanted to give him the current value. They had to pick a date, and that was the date that they chose as a reasonably current substitute for today's date. I suppose Bosak and Lerner, were they saying, well, he's not entitled to an accounting down to the date and to get his partnership share because he committed all these wrong acts, I guess. He's not entitled to that. Was that their position? Well, they had a couple of positions. That was one, which was rejected by the arbitrators. They found against them on all of the wrongful acts as a defense. But their initial argument, as I said, was that Mr. Sourd never had a partnership interest in Cartesian at all. His outstanding is $500,000 investment? Right. They said, well, that $500,000 wasn't really his. It came from a different partnership. It wasn't really his. The arbitrators found against them on that fact. They said it was indeed Mr. Sourd's money. So now the arbitrators say, okay, you were a partner. You were wrongfully ousted. This is what you should have received had you not been ousted up to the date of this determination. Strike a balance. You're entitled to this money. Now, then they go on in award number four. And in that award, they say, now we're going to compensate you for having been tossed out, which is something different from not getting your limited partnership interest. It was a tort that was committed against you. Is that right? Well, yes, that's right. But it wasn't in addition. It was an alternative remedy. And they said in award number four, the damages we find for the tort will be deemed satisfied if Bozak and Lerner pay the accounting award. So they were alternative remedies, the tort award being an alternative to the equitable accounting. The damages for the tort award were the punitive damages, $20 million. The punitive damages, the arbitrators determined separately in interim award number five. What were the damages for the conversion? $1.1 million, which were determined as of the date that they threw him out in December 2003. They used December 31st, 2003 as the date of conversion. The September 6th award was for what? September 2006 was the accounting. They said, look, they threw him out, it was wrongful, damages as of that date are $1 million. In addition, since this was really rightfully his partnership interest and it was growing over the next three years, he was entitled to the benefit of that as well. And so they awarded alternative damages, $1.4 million for the accounting, $1 million for throwing him out. And the $1 million for throwing him out was deemed satisfied if they paid him the $1.4 for the full accounting. And so this is exactly as in Gurman v. Colburn. Under California law, you have alternative remedies, and there's nothing wrong with pleading them in the alternative. The plaintiff isn't required to make an election until final judgment. And that's what happened here, and they were tried separately and sequenced. Now, the functus officio argument is that the arbitrators didn't have power to sequence their rulings in that way and decide the tort claims separately from the accounting claim. The argument essentially is, because you found that he was entitled to an accounting in 2006 of the current value of his interest, that means we couldn't have stolen it from him in 2003. That's the factual inconsistency argument. Well, because you said he's still a partner in 2006, well, we couldn't have converted it. Therefore, there can be no tort at all. And that's just, it's not, substantively it's not California law under the Gurman v. Colburn case, but that's an issue of fact and law for the arbitrators to decide. And you, Judge Smith, you asked the question about how do we determine finality? What's the standard there? And the standard is found in AAA Rule R7 and also in the agreement to arbitrate, which says that the arbitrators have the power to decide their own jurisdiction. And we went through this with Judge Zilley at the outset when they initially resisted arbitration. Judge Zilley said, I'm going to stay the lawsuit that Bozak and Lerner brought, let the arbitrators determine arbitrability, and if they determine something's not arbitrable, you can come back here and we'll litigate in court. And Bozak and Lerner, for tactical reasons, said we want to bring all our claims against Soward in the arbitration and we'll submit to arbitration under the AAA Rules. Well, the AAA Rules say the arbitrators can determine what their own power is, and this Court doesn't review that de novo. It's not a question of law for this Court's determination. The standard of review is did they exceed their powers in determining their own jurisdiction. And in the page that Ms. Sullivan cited to you, ER 316 from Interim Award No. 3, where it said we want Mr. Soward to be paid, his money's been withheld long enough, they're trying to starve him and crush him with these arbitration proceedings, we want him to be paid what's rightfully his, so it's confirmable immediately. If you turn the page to ER 317, the arbitrators say this Interim Award No. 3 does not include a determination or settlement of claims for punitive damages for the claims set for hearing in September, which were the tort claims, which they reserved their jurisdiction over to determine separately in September, which is commonly done all the time. The claims are severed for trial later. There's no inconsistency between finding ousted partners entitled to an accounting and also entitled to tort damages. And that's what happened here. It's not that controversial, which brings me to the punitive damages. The argument is that the arbitrators manifestly disregarded the law of punitive damages, and I commend to you Interim Award No. 5, which is the discussion of the award of punitive damages by these arbitrators. One a retired dean of Golden Gate Law School, another very experienced arbitrator who sat through, again, 60 days of hearing, more than 30 witnesses. These were not rash, impetuous people. And in Interim Award No. 5, they walked through the California standard for punitive damages, which requires that the finder of fact make an award that's sufficient to punish and deter the individual wrongdoer in light of that person's net worth. California law requires consideration of the net worth. And they found, based on the California statute, that a very high award was required in light of the conduct of these individual defendants, which is unique in any of the punitive damages cases you have been cited. The real problem, however, is in, as I understand it, the question is, on what basis did they find the award? Not on what they looked at to determine the award, but on what basis? And that the record, I mean, after review of the record, it seems as if it was given because of their actions in the court as well as in the arbitration. Where do I go in the record to find that it has to do with things which are normally that which deals with punitive damages? In award number five, which I just cited to you, ER 952, 953, what the award was based on was the conversion of Mr. Sauer's partnership interest, stealing his interest and throwing him out wrongfully. Now, they did that shortly before we filed the arbitration. It was the reason we filed the arbitration. And they continued to withhold his interest throughout the arbitration, but it was not stealing a partnership interest is not arbitration conduct. And what the panel found was that the overarching conduct of both Lerner and Bozak throughout the period commencing with the firing of Sauer in November 2003 through the end of testimonial hearings in this matter, which means through the present, was by clear and convincing evidence, oppression, fraud and malice justifying punitive damages. And they specifically found that Ms. Lerner was complicit in that scheme. And if you if the record, Your Honor, that has been presented to you is not the record of the arbitration. You only have 20 pages of hearing transcript of actual evidence. You have no testimony of Mr. Bozak, Ms. Lerner. You know, as you pointed out in the last argument, it's pretty rare that you're going to get a defendant to come in and testify. Oh, yeah, I was acting with oppression, fraud and malice. I was I really wanted to hurt this guy. I didn't care how much it cost. I was going to crush him. You're not going to hear that. You have to be the finder of fact, listening to the witnesses, hearing the testimony and looking at the evidence. And that's what these two arbitrators did here. And when it came to punitive damages, they said California law, the Rifkin case has already held due process standards don't apply in arbitration. Due process is a right of the individual defendant who is hailed into court involuntarily against his will and has to respond to the power of the state. That's where due process applies. Arbitration is a voluntary agreement between two parties to submit to a nonjudicial process. It doesn't apply. But nevertheless, they went through BMW versus Gore. They went through State Farm and the State Farm case says there's no bright line test. There is no maximum limit for punitive damages. Each case has to be decided based on its own unique facts. And that's what the arbitrators tried to do here, honestly and in good faith. And under the Kiyosera case, the standard here recently reaffirmed in the Comedy Club case says that manifest disregard, while it's a shorthand for the statutory standards, doesn't mean errors of fact or law. The arbitrators may construe the governing law imperfectly in the course of delivering a decision. They may make errors with respect to the evidence. These are risks that every party to arbitration assumes, and such legal and factual errors lie far outside, far outside the conduct embraced in Section 10A4. I don't understand your answer to this, but of course what they're arguing is that by saying it's this conduct from the time they fired Sauer to date through the testimony and the proceedings, then obviously some of it had to be for litigation conduct. Well, for example, they created a fraudulent tax return that they filed with the IRS that happened during the arbitration. It came out during the arbitration, but it's not arbitration conduct. And again, the arbitrators had to base their ruling on the evidence that they heard and the demeanor and their judgment of the state of mind of Bozak and Lerner, which they judged through the evidence in the arbitration. So it was clearly they had the right to rely on what happened in the arbitration to make their determination of whether they had the requisite state of mind to award punitive damages. But the conduct was stealing his partnership interest, which they don't deny that they did. They don't deny that for three years they had his partnership interest. They denied that he was a partner. And they're coming to you saying you should say that was okay, because once the arbitrators issued interim award number one, it's over. And the arbitrators themselves rejected that. Judge Zille rejected that. The arbitrators certainly had the power to make an award, a tort award, and there is no FAA case here under Section 10A4. Thank you very much, counsel. Your time has expired. Thank you, Your Honors. Let me begin by responding to Mr. Sharp's last point, that in a punitive damages award of $20 million for failing to timely pay $1 million in a partnership interest, for which Mr. Soward was fully compensated, Mr. Bozak paid within two days the $1.4 million on the accounting. But to say that $20 million is acceptable punitive damages for failing to pay a $1 million partnership interest, the damage for which the panel itself said was just that he lost the time value of his money. He lost $200,000 in interest. So if you really think about this, this is a 100 to 1 punitive damages ratio. You're paying $20 million because for a short period of time until Mr. Bozak promptly paid the $1.4 million, he was deprived of his $1 million partnership interest. There is not a court in California and there's not a court that would uphold that under the due process clause as interpreted in state form. And if you say that it's acceptable for that to happen in arbitration, it's like putting up a sign, beware all ye who enter here into arbitration in the Ninth Circuit. Mr. Sharp says, well, they've contracted away the Constitution. They gave plenary powers. That's not so. California law incorporates the federal Constitution. And a panel can no more apply a punitive damages award that exceeds due process by such a far-out ratio as 100 to 1 or 20 to 1 in a pure economic injury case than it could say Mr. Bozak has to be an indentured servant to Mr. Sauer or that he has to suffer 40 lashes. Just as the Eighth Amendment and the Thirteenth Amendment would bar Judge Zille from confirming that sort of an award, it barred him from confirming a punitive damages award so grossly excessive as to violate due process here. But going back to Judge Smith's point, you need not even reach gross excessiveness if you find there is no basis for the tort of the defendant. And Judge Thompson was exactly right. The theory in Arbitration Award No. 3 was there was an intact partnership. And Judge Canby, if you go to page 309, you'll see it in bright lights. The panel in Arbitration Award No. 3 said there he is, Sauer is and continues to be a partner in Cartesian, and the partnership will be dissolved, shall be dissolved in the future unless Mr. Bozak promptly pays the accounting award he promptly paid. And guess what? The award was against Cartesian. So the ripping of the paper that Mr. Sharpe so dramatically performed here didn't happen in Award No. 3. Award No. 3, the paper was intact, the partnership was intact, and Mr. Sauer continued to be a partner. So there was no basis for ever getting to the conversion. That was not simply an election of remedies. It was a complete reversal of an essential element of the theory. The essential element of the accounting claim was the partnership is and continues to exist through 2006. As Judge Thompson rightly pointed out, there would be no award of $500,000 for the partnership interest until 2006 unless the partnership was extant. So there's no basis for the award, and Judge Smith, if you don't agree with us that there is no basis for the tort award anyway under the functus officio in Rule 46, you should also decide that there was no basis for the malice finding. You cannot base malice on litigation conduct, and Judge Canby, as you say, the findings of malice, trickery, and deceit all go to the conduct during the litigation. This was a case in which two sets of people had a hard-fought battle over money. Mr. Bosak and Ms. Lerner put into escrow the $2.7 million they owed on the contract claims. Mr. Sauer, by the way, the way this all began was that he committed very serious derelictions of duty that lost the faith of the people who had employed him all these years by hiding money. He owed $2 million. $2.7 from one side, $2 million from the other side, and the payment out of his partnership interest at 1.5 should have been the end of this case. But instead, the arbitrators conducted the very sort of vendetta that makes arbitration seem partial and unreliable and would cause people to lose trust in arbitration and send all these cases back into the courts by having a whole second phase in which they manufactured a tort claim that was inconsistent with the prior contract ruling and which labeled them, as Judge Thompson correctly said, to pile $20 million of punitive damages on top of a $1 million accounting award for which he suffered $200,000 in loss. Thank you.
judges: Canby, Thompson, Smith N. R.